# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA
### OPELIKA DIVISION

IN RE:

**ADRIAN B. BUTLER AND MONIQUE**    **CHAPTER 13**
**BUTLER, nonfiling co-debtor;**    **CASE NO. 14-80930**

      **Debtor(s)**

## MOTION TO LIFT THE AUTOMATIC STAY AND CO-DEBTOR STAY

Comes now Specialized Loan Servicing LLC, as servicing agent for The Bank of New York Mellon Trust Company, National Association as successor to Deutsche Bank National Trust Company Americas f/k/a Bankers Trust Corporation, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2002-KS1 ("Movant"), and moves this Court, pursuant to 11 U.S.C. §§ 362 and 1301, for an order lifting the automatic stay and co-debtor stay on certain property which is currently subject to an interest held by Movant and shows unto the Court the following:

1. Movant is a secured creditor of the above-named Debtor(s) being the holder and owner of a certain note in the original principal amount of $109,350.00, executed by Adrian Butler and Monique Butler and payable to the order of Bank of Alabama, and is secured by a mortgage on certain real estate located in Lee County, Alabama, as evidenced by the attached instruments.

2. Specialized Loan Servicing LLC services the loan on the Property referenced in this Motion. In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee. Movant, directly or through an agent, has possession of

the Note. The Note is either made payable to Movant or has been duly endorsed. Movant is the original mortgagee or beneficiary or the assignee of the Mortgage.

3.   Movant avers that Debtor(s) has been in default in the payment of the post-petition installments due Movant, as assignee of said note and mortgage, pursuant to the terms of said note, since May 2015 and thereafter.

WHEREFORE, Movant respectfully requests that the Court issue an order stating that the automatic stay and co-debtor stay is lifted pursuant to 11 U.S.C. §§ 362 and 1301, and said property be released to Movant so as to permit Movant to liquidate its security and to apply the proceeds to said indebtedness secured thereby, and to such other relief to which it may be entitled.

By: /s/ Evan Eberhardt
Evan Eberhardt
Jauregui & Lindsey, LLC
244 Inverness Center Dr. Ste. 200
Birmingham, AL 35242
(205) 970-2233

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that a copy of the foregoing has been served upon the following using the CM/ECF System, on August 1, 2016, to-wit:

David S. Clark
David S. Clark Attorney at Law, LLC
P. O. Box 1586
Opelika, AL 36803

Curtis C. Reding
P. O. Box 173
Montgomery, AL 36101
And by United States Mail, postage prepaid and properly addressed to:

Adrian B. Butler
Monique Butler
201 Oak St.
Opelika, AL 36801


                                   By: <u>/s/ Evan Eberhardt</u>
                                       Evan Eberhardt

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### OPELIKA DIVISION

| | |
|---|---|
| IN RE: § | |
| § | **CASE NO. 14-80930** |
| **ADRIAN B. BUTLER** § | |
| **DEBTOR(S)** § | **CHAPTER 13** |
| § | |
| **MONIQUE BUTLER** § | |
| **CODEBTOR** § | |
| § | |
| **SPECIALIZED LOAN SERVICING LLC, AS** § | |
| **SERVICING AGENT FOR THE BANK OF** § | |
| **NEW YORK MELLON TRUST COMPANY,** § | |
| **NATIONAL ASSOCIATION AS SUCCESSOR** § | |
| **TO DEUTSCHE BANK TRUST COMPANY** § | |
| **AMERICAS F/K/A BANKERS TRUST** § | |
| **CORPORATION, AS TRUSTEE FOR** § | |
| **RESIDENTIAL ASSET SECURITIES** § | |
| **CORPORATION, HOME EQUITY** § | |
| **MORTGAGE ASSET-BACKED PASS-** § | |
| **THROUGH CERTIFICATES, SERIES 2002-KS1** § | |
| **MOVANT** § | |
| **VS** § | |
| **ADRIAN B. BUTLER** § | |
| **MONIQUE BUTLER** § | |
| **AND CURTIS C. REDING, TRUSTEE** § | |
| **RESPONDENTS** § | |

## AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

"I, Ami McKernan hereby state the following:

1. Specialized Loan Servicing LLC, as servicing agent for The Bank of New York Mellon Trust Company, National Association as successor to Deutsche Bank Trust Company Americas f/k/a Bankers Trust Corporation, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2002-KS1 ("Movant") and its successors and/or assigns, is authorized to sue on its own behalf.

2. I am an employee of Specialized Loan Servicing LLC and duly authorized representative of Movant and hereby make this affidavit in such capacity. All facts recited herein are within my personal knowledge of all records concerning the account with Debtor(s) and Codebtor and are true and correct.

3. In the course of my employment, I have become familiar with the manner and method in which Specialized Loan Servicing LLC maintains its books and records in its regular course of business. Those books and

records are managed by employees and agents whose duty it is to keep the books and records accurately and completely and to record each event or item at or near the time of the event or item so noted.

4. I am familiar with the books and records related to the Note secured by Mortgage/Deed of Trust of even date therewith covering certain real property located at 201 Oak Street, Opelika, Alabama 36801, and more particularly described in the Mortgage/Deed of Trust.

5. Note and/or Mortgage/Deed of Trust, Loan Number xxxxxx6296, in the original principal amount of $109,350.00, dated August 20, 2001 was executed by the Original Mortgagor(s): Adrian Butler and Monique Butler to Bank of Alabama.

6. Debtor(s) and Codebtor are in default on their obligations to Movant in that Debtor(s) and Codebtor have failed to make their installment payments when due and owing pursuant to the terms of the above-described Note and/or Mortgage/Deed of Trust.

7. As of the date of filing of this case, the pre-petition arrears were $5,668.39. As of July 19, 2016, per the Trustee Ledger, no disbursements have been made.

8. As of July 19, 2016, the unpaid principal balance was $66,406.33, the deferred principal balance was $26,966.67, which is a combined principal balance of $93,373.00. Debtor(s) and Codebtor are due 15 post-petition payments, totaling $8,519.49.

| Number of Missed Payments | From | To | Missed Principal & Interest | Missed Escrow (if Applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 9 | 05/01/2015 | 01/01/2016 | $434.51 | $133.36 | $567.87 | $5,110.83 |
| 6 | 02/01/2016 | 07/01/2016 | $434.51 | $133.60 | $568.11 | $3,408.66 |

9. As of July 19, 2016, there are unpaid post-petition fees and costs incurred less than 180 days ago in the amount of $0.00 due and owing that have not been Noticed under Rule 3002.1(c).

| Date Assessed | Description of Fee | Amount |
|---|---|---|
| N/A | N/A | N/A |

10. As of July 19, 2016, the total post-petition delinquency is $8,078.42, which includes a credit of the suspense balance of $441.07.

11. By failing to make the regular monthly installment payments due pursuant to the Note and/or Mortgage/Deed of Trust, Debtor(s) and Codebtor have not provided adequate protection to Movant.

AFFIDAVIT IN SUPPORT OF
MOTION FOR RELIEF FROM STAY

AffMRSLS000000
J122-N-2383

Case 14-80930    Doc 35    Filed 08/01/16    Entered 08/01/16 11:02:24    Desc Main
Document    Page 5 of 44

12. Movant has had to retain counsel to represent it before this Court and is incurring legal expenses and attorneys' fees for which it is entitled to reimbursement under the terms of the Note.

13. Further, according to the Debtor(s) schedules, the estimated value of the subject property is $68,310.00. Thus, after full satisfaction of the indebtedness due to Movant under the terms of the Note there is no equity in the property.

I declare that the foregoing facts are true and correct to the best of my knowledge.

"FURTHER AFFIANT SAYETH NOT."

Specialized Loan Servicing LLC, as servicing agent for The Bank of New York Mellon Trust Company, National Association as successor to Deutsche Bank Trust Company Americas f/k/a Bankers Trust Corporation, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2002-KS1

14-80930

By: _____  JUL 27 2016

Ami McKernan Second Assistant Vice President
A duly Authorized Representative

State of Colorado
County of Douglas

The foregoing instrument was acknowledged before me this _____ by
_____ (Date)
_____ of Specialized Loan Servicing LLC, a Delaware
(Name, Title)
Limited Liability Company, on behalf of the LLC.

_____
(Notary's official Signature)

_____
(Commission Expiration)

AFFIDAVIT IN SUPPORT OF
MOTION FOR RELIEF FROM STAY

AffMnSLS00000
4122-N-2383

Case 14-80930    Doc 35    Filed 08/01/16    Entered 08/01/16 11:02:24    Desc Main
Document    Page 6 of 44

# COLORADO NOTARIAL JURAT

STATE OF COLORADO    )

COUNTY OF DOUGLAS    )

Subscribed and sworn before me in the County of Douglas, State of Colorado this

_JUL 2 7 2016_    by    Ami McKernan    _Second Assistant Vice President_
   (Date)                              (Name)

_[signature]_
Notary's Official Signature

```
JORDAN SCOTT LASSLEY
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20114045016
MY COMMISSION EXPIRES 07/10/2019
```

_[signature]_
Commission Expiration

| Description of document this notarial certificate is being attached to: | |
|---|---|
| Type / Title of Document: | _Affidavit_ |
| Date of Document: | JUL 2 7 2016 |
| Number of Pages: | _3_ |
| Additional Signers (other than those named in notarial certificate) | _N/A_ |

Note: This is a jurat format notarial certificate. This document as well as the document it is attached to cannot contain any blank lines. Please ensure all blanks are filled in prior to notarization.

_Butler_

| Creditor: | Specialized Loan Servicing LLC |
|---|---|
| Debtor: | Adrian B. Butler |
| Case No.: | 14-80930 |
| Loan No.: | xxxxxx6296 |
| Our File No.: | 4122-N-2383 |
| Collateral: | 201 Oak Street<br>Opelika, AL 36801 |

**PAYMENTS RECEIVED**

| | |
|---|---|
| Loan Status as of: | 7/19/2016 |
| Initial Due Date: | 8/1/2014 |

| Date Received | Amount Received | Due Date | Amount Due | NSF/Late Charges/Other | Paid Over/Short | Description |
|---|---|---|---|---|---|---|
| | $ - | 8/1/2014 | $ 582.04 | $ - | $ (582.04) | Payment Accrued |
| 8/21/2014 | $ 651.82 | | | $ - | $ 651.82 | Funds Received |
| | $ - | 9/1/2014 | $ 582.04 | $ - | $ (582.04) | Payment Accrued |
| 9/3/2014 | $ (651.82) | | | $ - | $ (651.82) | Payment Reversed |
| 9/9/2014 | $ 509.53 | | | $ - | $ 509.53 | Funds Received |
| 9/22/2014 | $ 651.82 | | | $ - | $ 651.82 | Funds Received |
| | $ - | 10/1/2014 | $ 582.04 | $ - | $ (582.04) | Payment Accrued |
| 10/2/2014 | $ (651.82) | | | $ - | $ (651.82) | Payment Reversed |
| | $ - | 11/1/2014 | $ 582.04 | $ - | $ (582.04) | Payment Accrued |
| | $ - | 12/1/2014 | $ 582.04 | $ - | $ (582.04) | Payment Accrued |
| | $ - | 1/1/2015 | $ 582.04 | $ - | $ (582.04) | Payment Accrued |
| | $ - | 2/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| 2/19/2015 | $ 567.87 | | | $ - | $ 567.87 | Funds Received |
| | $ - | 3/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| 3/11/2015 | $ 567.87 | | | $ - | $ 567.87 | Funds Received |
| | $ - | 4/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| 4/9/2015 | $ 567.87 | | | $ - | $ 567.87 | Funds Received |
| | $ - | 5/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| 5/29/2015 | $ 582.04 | | | $ - | $ 582.04 | Funds Received |
| | $ - | 6/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| 7/1/2015 | $ 567.87 | | | $ - | $ 567.87 | Funds Received |
| | $ - | 7/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| | $ - | 8/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| 8/3/2015 | $ 567.87 | | | $ - | $ 567.87 | Funds Received |

| Date | Amount | Date | Amount | | Amount | Description |
|---|---|---|---|---|---|---|
| 8/25/2015 | $ 568.00 | | | $ - | $ 568.00 | Funds Received |
| | $ - | 9/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| | $ - | 10/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| | $ - | 11/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| | $ - | 12/1/2015 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| | $ - | 1/1/2016 | $ 567.87 | $ - | $ (567.87) | Payment Accrued |
| | $ - | 2/1/2016 | $ 568.11 | $ - | $ (568.11) | Payment Accrued |
| 2/19/2016 | $ 568.00 | | | $ - | $ 568.00 | Funds Received |
| | $ - | 3/1/2016 | $ 568.11 | $ - | $ (568.11) | Payment Accrued |
| | $ - | 4/1/2016 | $ 568.11 | $ - | $ (568.11) | Payment Accrued |
| | $ - | 5/1/2016 | $ 568.11 | $ - | $ (568.11) | Payment Accrued |
| | $ - | 6/1/2016 | $ 568.11 | $ - | $ (568.11) | Payment Accrued |
| 6/16/2016 | $ 570.00 | | | $ - | $ 570.00 | Funds Received |
| | $ - | 7/1/2016 | $ 568.11 | $ - | $ (568.11) | Payment Accrued |
| Total: | $ 5,636.92 | | $ 13,715.34 | $ - | $ (8,078.42) | |

| Delinquent Payments | | | Days Delinquent: | | 445 | | |
|---|---|---|---|---|---|---|---|
| Month Due | P&I Due | | Escrow Due | | Stip Due | | Total Due |
| 5/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 6/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 7/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 8/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 9/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 10/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 11/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 12/1/2015 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 1/1/2016 | $ | 434.51 | $ | 133.36 | $ | - | $ 567.87 |
| 2/1/2016 | $ | 434.51 | $ | 133.60 | $ | - | $ 568.11 |
| 3/1/2016 | $ | 434.51 | $ | 133.60 | $ | - | $ 568.11 |
| 4/1/2016 | $ | 434.51 | $ | 133.60 | $ | - | $ 568.11 |
| 5/1/2016 | $ | 434.51 | $ | 133.60 | $ | - | $ 568.11 |
| 6/1/2016 | $ | 434.51 | $ | 133.60 | $ | - | $ 568.11 |
| 7/1/2016 | $ | 434.51 | $ | 133.60 | $ | - | $ 568.11 |
| Delinquency | | | | | | | $ 8,519.49 |
| Less Suspense | | | | | | | $ 441.07 |
| Total Delinquency | | | | | | | $ 8,078.42 |



# NOTE
### (ALABAMA FIXED RATE)

| August 20, 2001 | COLUMBUS | Georgia |
|---|---|---|
| [Date] | [City] | [State] |

**201 OAK STREET**
**OPELIKA, AL 36801**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $109,350.00      (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
**BANK OF ALABAMA**

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     **11.000 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   **1st**   day of each month beginning on   **October 1, 2001**   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   **September 1, 2031**     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2340 Woodcrest Place Ste 250**
**Birmingham, AL 35209**
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$1,041.37**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a)

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
Form 3200 1/01
LMMC Forms Inc. (800) 446-3555
(Alabama) 1/01

Page 1 of 3      Initials: _LB_ _MB_

any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   **15**   calender days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **5.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
Form 3200 1/01
Laser Forms Inc. (800) 446-3555
          (Alabama) 1/01

Page 2 of 3      Initials: *A.B. MB*

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Caution -- It is important that you thoroughly read the contract before you sign it.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ADRIAN BUTLER                 -Borrower                                           -Borrower

_____ (Seal)          _____ (Seal)
MONIQUE BUTLER                -Borrower                                           -Borrower

[Sign Original Only]

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument
Form 3200 1/01
Laser Forms Inc. (800) 446-3555
████████ (Alabama) 1/01                     Page 3 of 3

# N O T E   A L L O N G E

BORROWER(S):Adrian Butler
            Monique Butler

DATE OF LOAN:August 20, 2001


WITHOUT RECOURSE, PAY TO THE ORDER OF:

_____

BY: _____
Bank of Alabama
James Cooper, Jr., Sr. Vice President



MORT 2822 137
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY
Mortgage Tax        164.10
Recording Fee        47.00
TOTAL               211.10

After Recording Return To:
MEACHAM & EARLEY ATTYS
5704 VETERANS PARKWAY
COLUMBUS, GA 31904

THIS IS NOT A PURCHASE MONEY MORTGAGE

[Space Above This Line For Recording Data]

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   August 20, 2001
together with all Riders to this document.

(B) "Borrower" is
ADRIAN BUTLER, MONIQUE BUTLER, , HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is  BANK OF ALABAMA

Lender is a
organized and existing under the laws of   ALABAMA
Lender's address is   2340 Woodcrest Place Ste 250
                      Birmingham, AL 35209
Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated  August 20, 2001
The Note states that Borrower owes Lender   One Hundred Nine Thousand Three Hundred Fifty DOLLARS and Zero CENTS

Dollars (U.S. $ 109,350.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   September 1, 2031

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555
                (A)                        Page 1 of 13        Initials: _____

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider            ☐ Second Home Rider
☐ Balloon Rider           ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ Biweekly Payment Rider  ☐ V.A. Rider
☐ Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

MORT 2822   138
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555

Page 2 of 13      Initials: _____

<u>TRANSFER OF RIGHTS IN THE PROPERTY</u>

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to Lender, with power of sale, the following described property located in the

COUNTY of Lee :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

SEE ATTACHED EXHIBIT "A"

MORT    2822    139
Recorded in Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

which currently has the address of        201 OAK STREET
[Street]

OPELIKA , Alabama 36801 ("Property Address"):
[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555
Page 3 of 13        Initials: AB MB



**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
LaserForms Inc. (800) 446-3555
                                            1/01

Page 4 of 13          Initials: _____

Recorded In Above Book and Page
2822    140
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
LaserForms Inc. (800) 446-3555
                                                        1/01

Page 5 of 13       Initials: _____

2822      141
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
LaserForms Inc. (800) 446-5555
1/01                          Page 6 of 13          Initials: _____

2822  142
Recorded in Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-5555          1.01

Page 7 of 13          Initials: _____

2822   143
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc.(800) 446-3555
                    1/01                          Page 8 of 13        In't/Sals:  AP  HB

2822    144
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555
1701    Page 9 of 13    Initials: _____

Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms,

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc (800) 446-3555

Page 10 of 13    Initials:

2822    145
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  Sale of Note; Change of Loan Servicer; Notice of Grievance.  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances.  As used in this Section 21:  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.  Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555
1/01                                         Page 11 of 13          Initials:

MORT    2822    147
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in                                                                      LEE County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

MORT    2822    148
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555
                1/01

Page 12 of 13          In Sals:   AB  MB

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Misty Each_      _Adrian Butler_    (Seal)
                             ADRIAN BUTLER                 -Borrower

_Misty E. Each_      _Monique Butler_    (Seal)
                             MONIQUE BUTLER             -Borrower

                                                     (Seal)
                                                     -Borrower

                                                     (Seal)
                                                     -Borrower

[Space Below This Line For Acknowledgment]

STATE OF ALABAMA,                LEE                County ss:

     On this    20th    day of   August, 2001          , I,    LISA E. BOONE
said state, hereby certify that                              , a Notary Public in and for said county and in
     ADRIAN BUTLER, MONIQUE BUTLER, ,    HUSBAND & WIFE

whose name(s) was/were signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

     Given under my hand and seal of office this the     20th   day of August, 2001

My Commission expires:   1/24/04           _[signature]_

This instrument was prepared by:   KARAN G. LEE
                                 2340 WOODCREST PLACE, SUITE 250
                                 BIRMINGHAM, AL   35209

ALABAMA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3001 1/01
Laser Forms Inc. (800) 446-3555                           Page 13 of 13
             1/01

MORT    2822   149
Recorded In Above Book and Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

Part of Lots 9, 10 and 11, Block 11, of the Byrd Lands Survey as shown on Totten's Official Real Estate Map of Opelika, 1930, as recorded in Town Plat Book 2, at Page 9, in the Office of the Judge of Probate of Lee County, Alabama, said parcel being more particularly described as follows, to-wit: Commence at the Northeast corner of the Southwest quarter of Section 8, Township 19 North, Range 27 East, in Opelika, Lee County, Alabama; thence run South 83°-13'-36" West, 2016.69 feet, more or less, to an iron pin as the point in the City of Opelika where the West margin of Lee Street intersects the Southeast margin of Oak Street and the point of beginning of the parcel to be described herein: From said Point of Beginning, thence run South 00°-41'-16' East, along the West margin of aforesaid Lee Street, 259.36 feet to an iron pin; thence run South 89°-18'-44" West, 136.22 feet to an iron pin; thence run South 46°-50'-24" West, 99.54 feet to an iron pin on the Northeast margin of South 3rd Street; thence run North 42°-30'-16" West, along said margin of said South 3rd Street, 15.00 feet to an iron pin; thence run North 47°-10'-45" East, 145.00 feet to an iron pin; thence run North 42°-30'-16" West, 85.86 feet to an iron pin on the Southeast margin of aforesaid Oak Street; thence run North 46°-50'-24" East, along said margin of Oak Street, 228.26 feet to the point of beginning. This parcel is the remainder of the real property described in Warranty Deed from T. L. Jamieson to Winston Smith T., Jr., dated May 8, 1956, and recorded in Deed Book 450, at Page 52, in the Office of the Judge of Probate of Lee County, Alabama.

This conveyance and the warranties hereinafter contained are made subject to any and all restrictions, easements, covenants and rights-of-way recorded in the Office of the Judge of Probate of Lee County, Alabama, affecting said above-described property.

MORT   2422   456
Recorded In Above Book 409 Page
11/06/2001 03:13:01 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

After Recording Return To:

PEELLE MANAGEMENT CORPORATION
ASSIGNMENT JOB #90788
P.O. BOX 30014
RENO, NV. 89520-3014
(775) 827-9600

STATE OF ALABAMA

JEFFERSON COUNTY          ALABAMA TRANSFER AND ASSIGNMENT

      FOR VALUE RECEIVED, the undersigned, Bank of Alabama, hereby transfers, assigns, and conveys to ✕            all its right, title, interest, powers and options in, to and under that certain Mortgage dated August 20, 2001 from Adrian and Monique Butler to Bank of Alabama, recorded in Mtg Bk 2022 Pg 87, on 11-6-2001     in the Probate Office of Lee County, Alabama, as well as to the land described therein and the indebtedness secured thereby.

      IN WITNESS WHEREOF, the undersigned has hereunto set its hand and seal this 30th day of October, 2001.

                                          Bank of Alabama

_____            _____
Witness                             James Cooper, Jr., Sr. Vice President

                ✕ Bankers Trust Company, as Trustee
                3 Park Plaza, Sixteenth Floor, Irvine, CA 92614-8539

STATE OF ALABAMA

JEFFERSON COUNTY          CORPORATE NOTARY ACKNOWLEDGEMENT

      Personally appeared before me the undersigned authority in and for the above styled jurisdiction, the within named James Cooper, Jr. who acknowledged that he/she is Sr. Vice President of Bank of Alabama, a corporation, and that he/she signed and delivered the foregoing instrument and affixed the corporate seal of said corporation, after being duly authorized so to act.

      Given under my hand and official seal of office this 30th day of October, 2001.

                            _____
                            Notary Public
                            My Commission Expires: 6/20/2002

THIS INSTRUMENT PREPARED BY: Sherry Jeffries for
Bank of Alabama
P.O. Box 59587
Birmingham, AL 35209
(205) 871-3666

IMP     Orion Financial Group Inc.

ADRIAN B
Specialized Loan Servicing, LLC / 348
RASC 2002-KS1              DOT Matches Request

MORT   2695   445
Recorded In Above Book and Page
03/16/2002 10:55:07 AM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

Part of Lots 9, 10 and 11, Block 11, of the Byrd Lands Survey as shown on Tatten's Official Real Estate Map of Opelika, 1930, as recorded in Town Plat Book 2, at Page 9, in the Office of the Judge of Probate of Lee County, Alabama, said parcel being more particularly described as follows, to-wit: Commence at the Northeast corner of the Southwest quarter of Section 8, Township 19 North, Range 27 East, in Opelika, Lee County, Alabama; thence run South 83°-13'-36" West, 2016.69 feet, more or less, to an iron pin as the point in the City of Opelika where the West margin of Lee Street intersects the Southeast margin of Oak Street and the point of beginning of the parcel to be described herein: From said Point of Beginning, thence run South 00°-41'-16" East, along the West margin of aforesaid Lee Street, 259.36 feet to an iron pin; thence run South 89°-18'-44" West, 136.22 feet to an iron pin; thence run South 46°-50'-24" West, 99.54 feet to an iron pin on the Northeast margin of South 3rd Street; thence run North 42°-30'-16" West, along said margin of said South 3rd Street, 15.00 feet to an iron pin; thence run North 47°-10'-45" East, 145.00 feet to an iron pin; thence run North 42°-30'-16" West, 85.86 feet to an iron pin on the Southeast margin of aforesaid Oak Street; thence run North 46°-50'-24" East, along said margin of Oak Street, 228.26 feet to the point of beginning. This parcel is the remainder of the real property described in Warranty Deed from T. L. Jamieson to Winston Smith T., Jr., dated May 8, 1956, and recorded in Deed Book 450, at Page 52, in the Office of the Judge of Probate of Lee County, Alabama.

This conveyance and the warranties hereinafter contained are made subject to any and all restrictions, easements, covenants and rights-of-way recorded in the Office of the Judge of Probate of Lee County, Alabama, affecting said above-described property.

MORT   2822   150
Recorded In Above Book and Page
11/08/2004 02:13:04 PM
BILL ENGLISH
PROBATE JUDGE
LEE COUNTY

4141 609
Recorded in the Above
MORTGAGES Book & Page
06-29-2015 03:26:45 PM
Bill English - Probate Judge
Lee County
Book/Pg: 4141/609
Term/Cashier: SCAN5 / JHB
Trant 14969,215966,292471
Recorded: 06-29-2015 15:27:26
REC Recording Fee                    8.00
Total Fees:  $ 8.00

PREPARED BY & RETURN TO:
M. E. Wileman
Orion Financial Group, Inc.
2860 Exchange Blvd # 100
Southlake, TX 76092

### Assignment of Mortgage                     Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS AS TRUSTEE FORMERLY KNOWN AS BANKERS TRUST COMPANY AS TRUSTEE 1100 VIRGINIA DRIVE, FORT WASHINGTON, PA 19034 (Assignor) by these presents does assign, and set over, without recourse, to THE BANK OF NEW YORK MELLON TRUST COMPANY, NATIONAL ASSOCIATION AS SUCCESSOR TO DEUTSCHE BANK TRUST COMPANY AMERICAS F/K/A BANKERS TRUST CORPORATION, AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2002-KS1 C/O SPECIALIZED LOAN SERVICING LLC, 8742 LUCENT BLVD #300, HIGHLANDS RANCH, CO 80139 (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by ADRIAN BUTLER, MONIQUE BUTLER, HUSBAND AND WIFE to BANK OF ALABAMA Said mortgage Dated: 8/10/2001 is recorded in the State of AL, County of Lee on 10/6/2001, as Volume 2822 Page 137 AMOUNT: $ 109,350.00
Property Address: 203 OAK STREET, OPELIKA, AL 36801

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed by its proper officer.
Executed on: 9.29.15
DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS AS TRUSTEE FORMERLY KNOWN AS BANKERS TRUST COMPANY AS TRUSTEE

By: _____
                Hang Luu
        Assistant Vice President

State of _____, County of _____
        On _____, before me, the undersigned, personally appeared _____ who acknowledged that he/she is _____ officer DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS AS TRUSTEE FORMERLY KNOWN AS BANKERS TRUST COMPANY AS TRUSTEE and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS AS TRUSTEE FORMERLY KNOWN AS BANKERS TRUST COMPANY AS TRUSTEE.

Please see attached

Notary public _____
My commission expires: _____

AL Lee                          SLS/ASN/RRASC#348

Investor Loan :

After Recording Return To:
Ocwen Loan Servicing, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID: RW1

This document was prepared by <u>Ocwen Loan Servicing, LLC</u>

_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): ADRIAN BUTLER
Lender\Servicer or Agent for Lender\Servicer ("Lender"): Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 8/20/2001
Loan Number:
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 201 OAK STREET
OPELIKA AL 36801

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage  The Note is secured by a Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument), dated the same date as the Note, and if applicable, recorded on  with Instrument Number  in Book  and/or Page number  of the real property records of LEE County, AL  Said Security Instrument covers the real and personal property described in such Security Instrument (the "Property") located at 201 OAK STREET  OPELIKA AL 36801, which real property is more particularly described as follows  The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

### (Legal Description – Attached as Exhibit if Recording Agreement)

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

_____
If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I "  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we) and vice versa where appropriate.

1. **My Representations**   I certify, represent to Lender and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.    I live in the Property as my principal residence, and the Property has not been condemned;

    C    There has been no change in the ownership of the Property since I signed the Loan Documents;

    D    I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

    E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

    F.    If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

    G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H.    If I was discharged in a Chapter 7 bankruptcy proceedings subsequent to the execution of the Loan Documents.  Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

    A.    TIME IS OF THE ESSENCE under this Agreement;

    B    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 3/1/2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived  The Loan Documents will be modified and the first modified payment will be due on 3/1/2013.

    A.    The new Maturity Date will be: 6/1/2032

    B.    The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan  The new Principal balance of my Note will be $101,167.69 (the "New Principal Balance")  The "New Principal Balance" may represent the sum of the "Deferred Principal Balance", (if applicable) the "Deferred Principal Reduction" (if applicable) and the "Interest Bearing Principal Balance".  I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the

interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  $20,300 00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and until I am required to payoff the Deferred Principal Balance, I will not be required to pay interest or make monthly payments on the deferred amount. In addition, $10,000 00 of the New Principal Balance is eligible for forgiveness (the Deferred Principal Reduction Amount) provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second, and third anniversaries of 11/1/2012, the Lender shall reduce the Deferred Principal Reduction Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule  The New Principal Balance less the Deferred Principal Balance and Deferred Principal Reduction Amount shall be referred to as the "Interest Bearing Principal Balance" and this amount is $70,867.69

Deferred Principal Reduction Amounts are subject to the Equity Share Arrangement if the Note is paid in full beginning 30 days after the Modification Effective Date and before the eight year anniversary date after the Modification Effective Date and the property value has increased from the property value $79,000.00 obtained by the lender prior to this Modification Agreement. The lender is entitled to at least 50 percent of any increase in property value of the total deferred principal reduction amount applied to my principal balance less documented capital improvements including receipts that I have made to the property after the Home Affordable Modification Trial Period Plan effective date and the date the loan is fully satisfied. The Lender will obtain a broker's price opinion on this property at the time of the payoff request which may delay the settlement date. I may be required to provide the lender with a copy of the listing agreement, sales contract, and estimated settlement statement (HUD1) if the property is being sold or a copy of the estimated settlement statement if the property is being refinanced so the lender can determine the Equity Share Arrangement amount

Interest at the rate of 3.875% will begin to accrue on the Interest Bearing Principal Balance as of 2/1/2013 and the first new monthly payment on the Interest Bearing Principal will be due on 3/1/2013.

My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends on |
|---|---|---|---|---|---|---|
| 3 875% | 2/1/2013 | $434 51 | $75.02, adjusts periodically | 509.53, adjusts periodically | 3/1/2013 | 6/1/2032 |

The Escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly

The above terms in this Section 3.C shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance

I further understand that, provided I am not in default under the terms of this Agreement and I my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance  The amount is subject to the Equity Shares Arrangements if the Note is paid in full prior to the eight year anniversary date after the Modification Effective Date

D    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3 C.

F.    I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of.  (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date

G    If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due

4    **Additional Agreements.**  I agree to the following:

A    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased, (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing

B    That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, mortgage insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan

D.    That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund by escrow account.

E    **Funds for Escrow Items.**  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds")

to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D   I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4 D

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds  Lender and I can agree in writing, however, that interest shall be paid on the Funds  Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender

F   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed. If I was discharged in a Chapter 7 bankruptcy proceedings subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement

G.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me

I.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee or my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provisions is null and void

K.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and no withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information

and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii)Fannie Mae and Freddie Mae in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v)any HUD certified housing counselor.

N    That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this section 4.N shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance

P.   Important information regarding your loan modification.

**Initial Interest Rate and Initial Payment Amount**

- According to your mortgage payment calculated for long-term affordability, your modified loan will include a deferred balance requiring a balloon payment.
- The amount of your initial monthly payment on your modified loan will be based on three factors
    - the interest rate reflected in the agreement;
    - the current interest Bearing Principal Balance of the loan, and
    - the remaining term \ amortization period of the loan.

Your new monthly payment of principal and interest will be calculated based on a remaining Term of 232 months. Although your new payment will be sufficient enough to substantially pay down your loan balance, a balloon payment in the amount of $30,300.00 will be due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due, and the Lender will be under no obligation to refinance your loan

In addition, $10,000 00, of the Deferred Principal Reduction Balance may remain due when the term of your loan expires or when you pay off the modified loan, which will be when you sell or transfer an interest in your house, refinance the loan, or when the last scheduled payment is due As detailed in Section 3C, provided you are not in default on my new payments (equivalent of three full monthly payments due and unpaid on the last day of any month), the Lender shall reduce the Deferred Principal Reduction Balance of my note equal to one-third of the Deferred Principal Reduction Amount on each of the first, second, and third anniversaries of 11/1/2012; thereby reducing the balloon payment that would remain outstanding when your loan term expires

**How Your Monthly Payment Can Change- Balloon Payment**

- You will be notified in writing at least 90 but not more than 120 days before the date the balloon payment is due. This notice will be mailed to you at the most current mailing address you supply and will contain information about the amount of the balloon payment, the date it is due and the telephone number of the Lender's representative (or loan servicer's representative) available to answer questions you may have about the notice.

    THE LENDER HAS NO OBLIGATION TO REFINANCE THIS LOAN AT THE END OF ITS TERM. THEREFORE, YOU MAY BE REQUIRED TO REPAY THE LOAN OUT OF ASSETS YOU OWN OR YOU MAY HAVE TO FIND ANOTHER LENDER WILLING TO REFINANCE THE LOAN.

    ASSUMING THIS LENDER OR ANOTHER LENDER REFINANCES THE LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN.

---

### Example of Balloon Payment

- The payment amount due at loan maturity can change substantially based upon amount of the loan, interest rate, and any principal payments you choose to make before loan maturity, among other factors.

| | |
|---|---|
| Unpaid Loan Balance at Time of Modification | $100,000 |
| Loan Balance That Does Not Accrue Interest (Deferred Principal) | $25,000 |
| Loan Balance That Does Accrue Interest | $75,000 |
| Interest Rate | 7.7500% |
| Deferred Principal Balance Due at Maturity | $25,000 |

In the example above, the outstanding loan balance of $25,000 would be due and payable at maturity.

This summary is intended for reference purposes only.

---

EACH OF THE BORROWER AND THE "LENDER" ACKNOWLEDGE THAT NO REPRESENTATIONS, AGREEMENTS OR PROMISES WERE MADE BY THE OTHER PARTY OR ANY OF ITS REPRESENTATIVES OTHER THAN THOSE REPRESENTATIONS, AGREEMENTS OR PROMISES SPECIFICALLY CONTAINED HEREIN. THIS AGREEMENT, AND THE NOTE AND SECURITY INSTRUMENT (AS AMENDED HEREBY) SETS FORTH THE ENTIRE UNDERSTANDING BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES. BORROWER ALSO ACKNOWLEDGES THE RECEIPT BY INCLUSION IN THIS AGREEMENT, OF SPECIFIC INFORMATION DISCLOSING THE FUNCTION OF A BALLOON PAYMENT.

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal) *Adrian Butler*
ADRIAN BUTLER

*2/28/2013*
Date

*Tonya Brown*
Witness

*Tonya Brown*
Print Name

(Seal) _____
Date _____

_____
Witness

_____
Print Name

(Seal) _____
Date _____

_____
Witness

_____
Print Name

(Seal) _____
Date _____

_____
Witness

_____
Print Name

_____ [Space Below This Line For Acknowledgement] _____

BORROWER ACKNOWLEDGMENT
State of *Alabama*

County of *Lee*

On *2/28/2013*, before me *Daphne Dowdell*, personally appeared ADRIAN
BUTLER, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s)
or entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal

*Daphne Dowdell*
Notary Public

My Commission Expires: *1/28/2017*

Ocwen Loan Servicing, LLC

By: _____
     Authorized Officer

Date: _____

**LENDER ACKNOWLEDGMENT**

State of    IOWA
County of

On this ____ day of _____, 20____, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _____ personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of Ocwen Loan Servicing, LLC and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained

Witness my hand and official seal.

_____
Notary Public

My Commission Expires: _____

# Case Number 1480930

## Debtor Information

Debtor 1    ADRIAN B BUTLER
Debtor 2

NATIONAL DATA CENTER

**Status**
Trustee Date current as of  07/18/2016
Total of 8 marked Claim(s)  $313,977.84
Outstanding amount in marked claims  $17,005.17

## Trustee Information

Trustee    Curtis C. Reding

### CASE INFORMATION

| | |
|---|---|
| Case Number | 1480930 |
| Case Status | ACTIVE |
| Customer Code | 4122-N-2383 |
| Balance on Hand | $144.00 |
| Last Receipt Date | 08/28/2016 |
| Last Receipt Amount | $144.00 |
| Last Disbursement Date | 06/22/2016 |
| Percentage to Unsecured | 0.00% |
| Plan Base | $0.00 |
| Total Paid Into Plan | $3,197.34 |
| Total Paid to all Parties | $3,053.34 |
| Total Paid to Creditors | |
| Delinquency Amount | |
| Min To Unsecured | |
| Court Case Number | 14-80930-WRS |
| Unsecured Interest | 0.0000 |
| Proposed Length Of Plan | 60 |

| | |
|---|---|
| Filing Fee In Plan | |
| Filing Fee Paid to Date | |
| Date Petition Filed | 07/29/2014 |
| Date Plan Filed | 07/18/2014 |
| First 341 Meeting Date | 09/18/2014 |
| Date Case Confirmed | 10/15/2014 |
| Date Case Closed | |
| Bar Date | |
| Cleared Date | |
| Date First Payment Due | 08/28/2014 |
| Confirmation Hearing Date | 10/15/2014 |
| Final Report Date | |
| Show Cause Date | |
| Probation Date | |
| Bar Check Flag | True |
| Disburse Flag | True |
| Hold Permanent | 0 |
| Hold Temporary | 0 |

Additional Parties In Interest

### TRUSTEE INFORMATION

| | |
|---|---|
| Trustee Name | Curtis C. Reding |
| Trustee City | Montgomery, AL |
| Amount Paid to Date | $151.39 |

### JUDGE/ATTORNEY INFORMATION

| | |
|---|---|
| Judge Name | William R. Sawyer |
| Court District | Middle District of Alabama |
| Court Division | Southern |
| Region | Eastern |
| Attorney Name | DAVID S CLARK |
| Attorney Address | ATTORNEY AT LAW LLC |
| | P O BOX 1566 |
| | OPELIKA, AL 368031566 |
| Attorney Phone | 334/493800 |
| Attorney Percent | 0.0000 |
| Attorney Pay Level For Percent | 0.0000 |
| Attorney Fee In Plan | |
| Attorney Paid to Date | |
| Attorney Fee Paid Outside Plan | |

### DEBTOR INFORMATION

| | Debtor 1 | | Debtor 2 |
|---|---|---|---|
| Debtor Name | ADRIAN B BUTLER | Debtor Name | |
| Direct Payment Amt | | Direct Payment Amt | |
| Direct Payment Frequency | | Direct Payment Frequency | |
| Payroll Deduction Amt | $72.00 | Payroll Deduction Amt | |
| Payroll Deduction Frequency | WEEKLY | Payroll Deduction Frequency | |

### PLAN STEP INFORI

| START DATE | DEBTOR NAME | PAYMENT AMOUNT | PAYMENT FREQUENCY | NUMBER OF PAY PERIODS | PAYING TYPE | PAYEE TYPE |
|---|---|---|---|---|---|---|
| 08/28/2014 | ADRIAN B BUTLER | $58.00 | WEEKLY | 22 | | Employer |
| 02/02/2015 | ADRIAN B BUTLER | $58.00 | WEEKLY | 18 | | Employer |
| 06/08/2015 | ADRIAN B BUTLER | $72.00 | WEEKLY | 999 | | Employer |

### CUSTOMER CASE TAG

Case Identifier:          Comment:

# Claim Summary

BANKRUPTCY DATA CENTER

| Case Number: 1460930 | Debtor1 Name: Adrian B Butler | Trustee Name: Curtis Reding |
|---|---|---|
| Case Status: Active | Debtor2 Name: | Trustee City: Montgomery, AL |

| CLAIM NUMB | CREDITOR NAME | CLAIM DESCRIPTION | CLAIM AMOUNT | PRINCIPAL PAID | INTEREST PAID | SCHEDULED AMOUNT | PRINCIPAL OWED | MONTHLY PAYME | INTEREST RATE % |
|---|---|---|---|---|---|---|---|---|---|
| 0 | DAVID S CLARK | ATTORNEY FEE | $3,000.00 | $1,966.41 | $0.00 | $3,000.00 | $1,033.59 | $3,000.00 | 0.0000% |
| 1 | TITLE CREDIT FINANCE INC | SECURED VEHICLE DEBT | $2,365.00 | $287.10 | $185.26 | $2,365.00 | $2,077.90 | $52.00 | 5.0000% |
| 0 | | FILING FEE | $260.00 | $260.00 | $0.00 | $260.00 | $0.00 | $260.00 | 0.0000% |
| 1 | W S BADCOCK CORP | SECURED | $920.00 | $124.78 | $73.40 | $1,518.00 | $775.22 | $20.00 | 5.0000% |
| 0 | CURTIS C REDING | NOTICE FEE | $4.00 | $4.00 | $0.00 | $4.00 | $0.00 | $0.00 | 0.0000% |
| 0 | | DEBTOR REFUND | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 10 | AUBURN UNIVERSITY FCU | UNSECURED | $0.00 | $0.00 | $0.00 | $519.00 | $0.00 | $0.00 | 0.0000% |
| 10001 | W S BADCOCK CORP | UNSECURED | $671.66 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 10004 | TITLE CREDIT FINANCE INC | UNSECURED | $178.65 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 11 | CAPSTONE FINANCE | UNSECURED | $0.00 | $0.00 | $0.00 | $1,100.00 | $0.00 | $0.00 | 0.0000% |
| 12 | CREDIT MANAGEMENT LP | UNSECURED | $525.00 | $0.00 | $0.00 | $525.00 | $0.00 | $0.00 | 0.0000% |
| 13 | CONTINENTAL FINANCE COMPANY LLC | UNSECURED | $0.00 | $0.00 | $0.00 | $600.00 | $0.00 | $0.00 | 0.0000% |
| 14 | CREDIT CENTRAL | UNSECURED | $0.00 | $0.00 | $0.00 | $1,295.00 | $0.00 | $0.00 | 0.0000% |
| 15 | CREDIT CENTRAL | UNSECURED | $0.00 | $0.00 | $0.00 | $970.00 | $0.00 | $0.00 | 0.0000% |
| 16 | HOLLOWAY CREDIT SOLUTIONS LLC | UNSECURED | $2,227.00 | $0.00 | $0.00 | $2,227.00 | $0.00 | $0.00 | 0.0000% |
| 17 | U S DEPT OF EDUCATION | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 18 | U.S. DEPARTMENT OF EDUCATION | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 19 | HOLLOWAY CREDIT SOLUTIONS LLC | UNSECURED | $56.00 | $0.00 | $0.00 | $56.00 | $0.00 | $0.00 | 0.0000% |
| 2 | SPECIALIZED LOAN SERVICING | SECURED MORTGAGE DEBT | $98,789.61 | $0.00 | $0.00 | $37,287.00 | $0.00 | $568.11 | 0.0000% |
| 20 | ATTORNEY GENERAL OF THE UNITED STAT | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 21 | U.S. DEPARTMENT OF EDUCATION | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 22 | ECMC | UNSECURED | $0.00 | $0.00 | $0.00 | $3,189.00 | $0.00 | $0.00 | 0.0000% |
| 23 | ECMC | UNSECURED | $13,439.68 | $0.00 | $0.00 | $5,364.00 | $0.00 | $0.00 | 0.0000% |
| 24 | ECMC | UNSECURED | $0.00 | $0.00 | $0.00 | $2,192.00 | $0.00 | $0.00 | 0.0000% |
| 25 | ECMC | UNSECURED | $0.00 | $0.00 | $0.00 | $2,695.00 | $0.00 | $0.00 | 0.0000% |
| 26 | HOLLOWAY CREDIT SOLUTIONS LLC | UNSECURED | $53.80 | $0.00 | $0.00 | $111.00 | $0.00 | $0.00 | 0.0000% |
| 27 | INTERNAL MEDICINE ASSO AUBU | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 28 | HART CONLEN | UNSECURED | $0.00 | $0.00 | $0.00 | $838.00 | $0.00 | $0.00 | 0.0000% |
| 29 | REGIONS BANK | UNSECURED | $549.91 | $0.00 | $0.00 | $252.00 | $0.00 | $0.00 | 0.0000% |
| 3 | SPECIALIZED LOAN SERVICING | ARREARS | $5,668.39 | $0.00 | $0.00 | $3,627.00 | $5,668.39 | $107.00 | 0.0000% |
| 30 | SECURITY FINANCE | UNSECURED | $0.00 | $0.00 | $0.00 | $5.00 | $0.00 | $0.00 | 0.0000% |
| 31 | SECURITY FINANCE CORPORATION | UNSECURED | $1,062.00 | $0.00 | $0.00 | $1,062.00 | $0.00 | $0.00 | 0.0000% |
| 32 | AMERICAN INFOSOURCE LP | UNSECURED | $0.00 | $0.00 | $0.00 | $1,954.00 | $0.00 | $0.00 | 0.0000% |
| 33 | STATE OF ALABAMA DHR | DSO PRIORITY CLAIM | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $474.65 | 0.0000% |
| 34 | ATLAS ACQUISITIONS LLC | UNSECURED | $352.59 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 35 | MONIQUE BUTLER | DSO PRIORITY CLAIM | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 36 | WELLS FARGO BANK NA | UNSECURED | $301.97 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 5 | INTERNAL REVENUE SERVICE | PRIORITY | $2,272.00 | $0.00 | $0.00 | $2,272.00 | $2,272.00 | $43.00 | 0.0000% |
| 6 | US ATTORNEY | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 7 | ATTORNEY GENERAL OF THE UNITED STAT | UNSECURED | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0.0000% |
| 8 | HOLLOWAY CREDIT SOLUTIONS LLC | UNSECURED | $727.50 | $0.00 | $0.00 | $727.00 | $0.00 | $0.00 | 0.0000% |
| 9 | AT&T MOBILITY II LLC | UNSECURED | $1,130.34 | $0.00 | $0.00 | $1,130.00 | $0.00 | $0.00 | 0.0000% |

# Claim Detail



| | |
|---|---|
| Case Number: 1480930 | Debtor1 Name: Adrian B Butler |
| Case Status: Active | Debtor2 Name: |

Trustee Name: Curtis Reding
Trustee City: Montgomery, Al.

## CLAIM DETAIL

| | |
|---|---|
| Claim Number | 3 |
| Claim Description | ARREARS |
| Claim Type Code | L |
| Class Type Description | SECURED |
| Class Type Code | S |
| Level | 25 |
| Comment | MTG/ARREARS 201 OAK ST OPELIKA AL |
| Account Number | 6296 MTG/ARRS |
| Reference Number | 2281268 |
| UCI | |
| Claim Start Payment Date | |
| Court Claim Number | 16 |
| Percent Paid | |
| Mortgage Due Date | |
| Final Report Category | Mortgage Arrears |
| Claim Status Description | |

## CLAIM AMOUNTS

| | |
|---|---|
| Claim Amount | $5,668.39 |
| Scheduled Amount | $3,627.00 |
| Monthly Payment | $107.00 |
| Collateral Value Amount | $5,668.39 |
| Principal Paid | $0.00 |
| Principal Owed | $5,668.39 |
| Principal Due Amount | $1,838.00 |
| Interest Rate % | 0.0000 |
| Interest Paid | $0.00 |
| Interest Due Amount | $0.00 |
| Trustee Percent | 0.0000 |

## CREDITOR INFORMATION

| | |
|---|---|
| Creditor Name | SPECIALIZED LOAN SERVICING |
| Mailing Address | P O BOX 636007 |
| | LITTLETON, CO 80163 |
| Contact Name | |
| Phone Number | (800) 315-4757 |
| Creditor Number | 615928 |

## FLAGS

No Check Indicator
Stop Disburse Indicator
Continuing Indicator
Reserve Indicator

## Payment History

### CUSTOMER CLAIM TAG

Payment Type          Claim Identifier: 6296 MTG/ARR    Comment:

### PAYMENT HISTORY

| DATE | CHECK NUMBER | NAME OF PARTY | DESCRIPTION | PAYMENT AMOUNT | TOTAL |
|---|---|---|---|---|---|

No records to display.